UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERIC TOLLIVER,

                  Plaintiff,

       -against-

LIEUTENANT JORDAN, C.O., et al.

                Defendants.

**MEMORANDUM
OPINION AND ORDER**

19-CV-11823 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff Eric Tolliver ("Plaintiff"), a prisoner currently incarcerated at Shawangunk Correctional Facility ("Shawangunk"), who is proceeding *pro se* and *in forma pauperis* ("IFP"),[1] brings this action under 42 U.S.C. § 1983 against Defendants Lieutenant Jordan ("Lt. Jordan"), C.O. DePaolo s/h/a C.O. DePalo ("DePaolo"), C.O. E. Bonnell ("Bonnell"), Gabriela Vega ("Vega"), and Richard Houck ("Houck," and collectively, "Defendants") for allegedly transferring him to another facility in retaliation for his having filed grievances and civil actions against correction officers while incarcerated in Sullivan Correctional Facility ("Sullivan"). (Doc. 17, "Am. Compl.").[2]

Defendants filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on January 18, 2021. (Doc. 35; Doc. 36, "Defs. Br."). On February 22, 2021, Plaintiff's first opposition to Defendants' motion to dismiss was filed. (Doc. 41, "Pl. First Opp."). By letter

---

[1] On February 4, 2020, Chief Judge McMahon denied Plaintiff's request to proceed IFP and dismissed the action without prejudice on the grounds that Plaintiff was barred under the "three-strikes" provision of the Prison Litigation Reform Act from filing federal civil action IFP. (Doc. 4 (citing 28 U.S.C. § 1915(g)). On February 26, 2020, Plaintiff filed a Rule 60(b) motion to set aside the Court's Order and Judgment, in which he argued that the Court overlooked his allegations that he was in imminent danger of serious physical harm at the time he filed the complaint, and he therefore fell within the exception to the three-strikes rule. (Doc. 7). On April 1, 2020, Judge Stanton granted Plaintiff's Rule 60(b) motion, reopened the action, and granted Plaintiff's IFP application. (Docs. 9, 10).

[2] Citations to the Amended Complaint correspond to the pagination generated by ECF.

dated February 22, 2021, and filed on February 25, 2021, Plaintiff requested that the Court "disregard" his first opposition, and consider instead the "re-placement" opposition, characterized as a "reply affirmation," that he submitted with his letter. (Doc. 47; Doc. 48 "Pl. Opp."). Plaintiff also sought, through his opposition, sanctions and a stay of proceedings.[3] (Pl. Opp. at 16). Defendants' motion to dismiss was fully briefed with the filing of their reply memorandum of law on April 9, 2021. (Doc. 52, "Reply Br.").

Separately, by letter dated January 26, 2021, and filed on February 17, 2021, Plaintiff advised the Court that he had been transferred to Shawangunk and requested that the Court transfer him back to Sing Sing Correctional Facility ("Sing Sing"). (Doc. 38). On February 18, 2021, the Court issued an Order construing Plaintiff's request as a letter-motion seeking injunctive relief, and directed Defendants to respond by February 26, 2021. (Doc. 39). On February 25, 2021, Defendants filed their response to Plaintiff's request for injunctive relief (Doc. 45), and on February 26, 2021, the Court issued an Order denying Plaintiff's request for a preliminary injunction transferring him back to Sing Sing. (Doc. 46). Plaintiff filed a motion for reconsideration of the Court's Order on March 10, 2021. (Doc. 49). Defendants filed their memorandum of law in opposition to Plaintiff's motion for reconsideration on March 23, 2021. (Doc. 50). On April 5, 2021, Plaintiff's "reply affirmation" was filed. (Doc. 51).

---

[3] Plaintiff purportedly moved for sanctions under Federal Rules of Civil Procedure 26 and 27, 28 U.S.C. § 1927, and the Court's inherent power, on the grounds that Defendants failed to respond to his interrogatories. (Pl. Opp. at 16). He requested further that the Court stay proceedings under Rule 37(b)(2)(A)(iv) until he receives responses to his interrogatories. (*Id.*). A motion for sanctions and a stay of proceedings must be brought by way of separate motion, and not in an affirmation in opposition. *See Keesh v. Quick*, No. 19-CV-08942, 2021 WL 639530, at *12 (S.D.N.Y. Feb. 17, 2021) (denying motion for Rule 11 sanctions made in opposition brief); *cf. Martin v. Mihalik*, No. 19-CV-7979, 2021 WL 1738458, at *1, n.3 (S.D.N.Y. May 3, 2021) (denying motion for pro bono counsel made in opposition brief); *Corr. Officers Benevolent Ass'n of Rockland Cty. v. Kralik*, No. 04-CV-2199, 2011 WL 1236135, at *1 n.2 (S.D.N.Y. Mar. 30, 2011) (declining to consider a "cross-motion" where plaintiffs requested relief via an opposition motion, without filing a notice of motion). Accordingly, Plaintiff's motion for sanctions and a stay of proceedings is procedurally improper and denied without prejudice.

For the reasons set forth below, Defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) is GRANTED IN PART, and Plaintiff's motion for reconsideration is DENIED.

## **BACKGROUND**

Plaintiff alleges that while he was incarcerated in Sullivan, he filed grievances, lawsuits, and a "criminal complaint against some of the" Defendants. (Am. Compl. at 6). Defendants, in response to his filings, threatened that they would have Plaintiff "packed up and shipped" to a facility far away from his family if he did not withdraw his grievances and lawsuits. (*Id*.). Plaintiff refused to withdraw his complaints and he was transferred to Attica Correctional Facility ("Attica").[4] (*Id*.). While incarcerated in Attica, Plaintiff filed complaints concerning his lack of access to the law library. (*Id*. at 6, 39, 43). Plaintiff alleges that he was subsequently transferred to Five Points Correctional Facility ("Five Points") in retaliation for his complaints filed while he was in Attica. As a result, Plaintiff alleges that he and his wife could not participate in any "Family Reunion Program." (*Id*. at 6).

Plaintiff annexes to his complaint four exhibits, which are compilations of his grievances, lawsuit, and the "criminal complaint" he filed while incarcerated in Sullivan, Attica, and Five Points, as well as correspondence from the facilities in response to his complaints. (*Id*. at 10-62). Plaintiff alleges through these exhibits that: (1) when he was in Sullivan, Bonnell and DePaolo failed to intervene when another inmate allegedly assaulted Plaintiff (*id*. at 13-15); (2) Defendants filed a misbehavior report that falsely accused him of getting in a fight with a high-ranking gang member (*id*. at 11, 14, 21, 27, 32 58); (3) Lt. Jordan tampered with and destroyed portions of a disciplinary hearing tape (*id*. at 11-12, 21-22, 27, 32); and (4) Defendants thereafter had him transferred to Attica (*id*. at 22, 32) and then to Five Points, two of the most violent and "gang-

---

[4] Plaintiff states in his opposition that, from Sullivan, he was first transferred to Downstate Correctional Facility, then to Auburn Correctional Facility, then to Attica, and then to Five Points. (Pl. Opp. at 7).

infested" prisons in the state, knowing that Plaintiff would be subject to gang retaliation (*id.* at 58).[5]

## **STANDARD OF REVIEW**

I.  Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a motion to dismiss under Rule 12(b)(1) at the pleadings stage, "the Court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Id.* (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019).

When "the defendant moves for dismissal under Rule 12(b)(1) . . . as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the

---

[5] Plaintiff, in his opposition to Defendants' motion to dismiss, argues that these allegations, which can be gleaned from the exhibits to his Amended Complaint, support Defendants' personal involvement in the claimed violations of Plaintiff's constitutional rights. (Pl. Opp. at 9-12). Plaintiff, an "active litigant" who has been involved in "numerous suits" (*id.* at 6), expressly pleads violations of his First and Fourteenth Amendment rights based upon the allegedly retaliatory transfers. There is no reason for the Court to believe Plaintiff is attempting to raise new claims out of these allegations. (*Cf.* Reply Br. at 6-7). To the extent that the allegations in Plaintiff's opposition support his existing claims of retaliatory transfer, the Court will consider them; but the Court will not consider them to the extent they purport to raise new claims. *See Davila v. Lang*, 343 F. Supp. 3d 254, 267-68 (S.D.N.Y. 2018) ("A *pro se* plaintiff may not raise 'entirely new' causes of action for the first time in his opposition papers, but the Court may consider new claims appearing for the first time in briefing if 'the claims could have been asserted based on the facts alleged in the complaint.'") (quoting *Vlad-Berindan v. MTA New York City Transit*, No. 14-CV-675, 2014 WL 6982929, at *5 (S.D.N.Y. Dec. 10, 2014)); *see also Mathie v. Goord*, 267 Fed. App'x 13, 14 (2d Cir. 2008) (affirming that a new constitutional challenge raised in opposition briefing was properly dismissed because the complaint did not "encompass that claim").

complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-6547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

## II. Federal Rule of Civil Procedure 12(b)(6)

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556

U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations . . . in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court also has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

The special solicitude due a *pro se* litigant, however, depends upon that particular party's litigation experience, as "the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010); *see also Shomo v. New York Dep't of Corr. Servs.*, No. 04-CV-0910, 2007 WL 2580509, at *3 (N.D.N.Y. Sept. 4, 2007) (observing that granting "experienced *pro se* litigants" the same solicitude due an inexperienced one "would tilt the scales of justice unfairly in favor of the *pro se* litigant and against his opponents"). Plaintiff is, by his own admissions, an experienced litigant.[6] Plaintiff states that he is a "jailhouse lawyer," a "very good law library clerk and a legal research instructor," that he "worked full time as a paralegal/clerk in the prison law library," that he "was—and is—an active litigant," and that he has been involved in "numerous suits." (Pl. Opp. at 6). The Court therefore will take Plaintiff's experience into account in considering this motion.

## ANALYSIS

I.    Federal Rule of Civil Procedure 12(b)(1): Subject-Matter Jurisdiction

The Court turns first to the issue of subject-matter jurisdiction and dismissal required under Rule 12(b)(1). *See Rivera v. Royce*, No. 19-CV-10425, 2021 WL 2413396, at *4 (S.D.N.Y. June 11, 2021); *Lane v. Reid*, 559 F. Supp. 1047, 1049 (S.D.N.Y. 1983) ("A challenge to the court's subject matter jurisdiction is properly raised by a motion to dismiss under Fed. R. Civ. P. 12(b)(1)."). The court is divested of subject matter jurisdiction if a case is moot, as there is no justiciable "case or controversy" for the court to decide. *Rosales v. Wright*, No. 10-CV-6044, 2012

---

[6] *See, e.g.*, *Tolliver v. Ercole*, No. 08-CV-4023 (S.D.N.Y.); *Tolliver v. D.O.C.S.*, No. 08-CV-4561 (S.D.N.Y.); *Tolliver v. Skinner*, No. 12-CV-971 (S.D.N.Y.); *Tolliver v. Ronemus*, No. 14-CV-1349 (S.D.N.Y.); *Tolliver v. Griffin*, No. 14-CV-5167 (S.D.N.Y.); *Tolliver v. Sidorowicz*, No. 16-CV-0559 (S.D.N.Y.); *King v. Keyser*, No. 18-CV-11301 (S.D.N.Y.); *Tolliver v. Keyser*, No. 18-CV-4391 (S.D.N.Y.); *Tolliver v. Keyser*, No. 19-CV-2282 (S.D.N.Y.); *Tolliver v. Capra*, No. 20-CV-11133 (S.D.N.Y.).

WL 87123, at *1 (W.D.N.Y. Jan. 11, 2012) (citing *Cty. of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010); *Muhammad v. City of New York Dep't of Corr.*, 126 F.3d 119, 122-23 (2d Cir. 1997); *Beyah v. Coughlin*, 789 F.2d 986, 988 (2d Cir. 1986)). "In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006).

Plaintiff seeks in this action, in addition to money damages, declaratory and injunctive relief compelling Defendants to transfer him back to Sullivan and prohibiting Defendants "and other DOCCS officials from further retaliat[ion]" against him. (Am. Compl. at 7-8). Plaintiff is presently incarcerated in Shawangunk, which is not the facility in which the actions complained of herein occurred, nor are Defendants Lt. Jordan, DePaolo, and Bonnell officials of that facility. (*See* Am. Compl.; Docs. 8, 38). Accordingly, the Court holds moot Plaintiff's injunctive and declaratory claims against Defendants Lt. Jordan, DePaolo, Bonnell.

Plaintiff's injunctive and declaratory claims against Defendants Vega and Houck, however, the New York State Department of Corrections and Community Supervision ("DOCCS") Movement and Control Analysts who approved Plaintiff's transfers, are not moot. Because Plaintiff also seeks compensatory and punitive damages against Defendants in connection with the allegedly retaliatory transfer from Sullivan (Am. Compl. at 8), that aspect of his Amended Complaint likewise is not moot. *See Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (holding claims for damages caused by transfer not moot).

II.   Federal Rule of Civil Procedure 12(b)(6): Section 1983 Failure to State a Claim for Relief

The Amended Complaint asserts claims under 42 U.S.C. § 1983 for violations of Plaintiff's First and Fourteenth Amendments rights in light of Defendants' alleged retaliation against him by transferring him to a different prison facility. (Am. Compl. at 6, 8). Section 1983 provides, in

pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). As such, in each permutation of a claim under that law, "a plaintiff must demonstrate: '(1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a state actor.'" *Town & Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, No. 17-CV-8586, 2019 WL 1368560, at *17 (S.D.N.Y. Mar. 26, 2019) (quoting *Walker v. Clemson*, No. 11-CV-9623, 2012 WL 2335865, at *3 (S.D.N.Y. June 20, 2012)).

As a threshold matter, "[t]o establish a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)); *see also Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (noting that supervisory liability requires that the "defendant, through the official's own individual actions, has violated the Constitution" (quoting *Iqbal*, 556 U.S. at 676)); *Greene v. Sampson*, No. 18-CV-6103, 2021 WL 355477, at *4 (S.D.N.Y. Feb. 2, 2021). "[T]here is no *respondeat superior* liability under § 1983." *Jamison v. Fischer*, No. 11-CV-4697, 2012 WL 4767173, at *4 (S.D.N.Y. Sept. 27, 2012). Failure to allege a defendant's personal involvement renders a "complaint . . . 'fatally defective' on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (quoting *Black v. United States*, 534 F.2d 524, 527-28 (2d Cir. 1976)).

A.  First Amendment Retaliation Claim

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action." *Randle v. Alexander*, No. 10-CV-9235, 2011 WL 1226228, at *2 (S.D.N.Y. Mar. 22, 2011) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). An action is "adverse" when it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . ." *Ruggiero v. Cty. of Orange*, No. 19-CV-3632, 2020 WL 5096032, at *7 (S.D.N.Y. Aug. 28, 2020) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). Conduct short of this standard is "simply *de minimis* and . . . outside the ambit of constitutional protection." *Id*. (quoting *Davis*, 320 F.3d at 353). Likewise, under the third element, the "allegations must support an inference that the protected conduct was 'a substantial or motivating factor for the adverse actions taken by prison officials.'" *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)). Bearing in mind that "[c]ourts properly approach prisoner retaliation claims with skepticism and particular care[] because virtually any adverse action taken against a prisoner by a prison official . . . can be characterized as a constitutionally proscribed retaliatory act," *Davis*, 320 F.3d at 352 (internal quotation marks omitted), "[c]onclusory allegations will not suffice; instead, a prisoner's claim for retaliation must be supported by specific and detailed factual allegations." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 517 (S.D.N.Y. 2012) (internal quotation marks omitted).

Plaintiff alleges that in retaliation for filing grievances, lawsuits, and a "criminal complaint against some of the" Defendants, he was transferred from Sullivan to Attica; and that in retaliation for filing complaints at Attica, he was transferred to Five Points, resulting in he and his wife's

inability to participate in any "Family Reunion Program." (Am. Compl. at 6). To the extent Plaintiff alleges that the roots of Defendants' retaliation are connected to Plaintiff's filing of grievances and lawsuits, such conduct is a protected activity under the First Amendment. *Keesh*, 2021 WL 639530, at *8; *Davis*, 320 F.3d at 353. Defendants do not dispute that the conduct at issue was protected. (Defs. Br. at 8). Accordingly, Plaintiff meets the first element of a retaliation claim.

With respect to the second element, the Second Circuit has held that a prison transfer may constitute an adverse action. *See Davis v. Kelly*, 160 F.3d 917, 920 (2d Cir. 1998) (observing that "prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights"). Accordingly, at the motion to dismiss stage, the Court construes Plaintiff's allegations "as describing an adverse action, and [he] should have the opportunity to develop facts that would demonstrate that Defendants' actions would deter a reasonable inmate from pursuing grievances." *Rodriguez v. City of New York*, No. 14-CV-8647, 2016 WL 5476003, at *8 (S.D.N.Y. Sept. 29, 2016) (internal quotation marks, citations, and alterations omitted).

As for the third element, on a First Amendment retaliation claim, "[c]ircumstantial evidence of causation may exist where the adverse action occurs soon after the protected activity." *Mateo v. Fischer*, 682 F. Supp. 2d 423, 435 (S.D.N.Y. 2010). The attachments to Plaintiff's Amended Complaint reveal that while at Sullivan, Plaintiff filed grievances against Lt. Jordan on May 3, 2019,[7] May 9, 2019, and May 16, 2019. (Am. Compl. at 11-12, 24, 27). Plaintiff alleges in his grievances that, sometime between April 30, 2019 and May 2, 2019, he notified Lt. Jordan that he intended to file a civil suit concerning DePaolo and Bonnell's alleged failure to intervene. (*Id.* at 27). A Court of Claims complaint against the State on New York was served upon the Attorney

---

[7] The Court notes that although dated May 3, 2019, Plaintiff's letter requests an update on the status of his May 16, 2019 grievance against Lt. Jordan.

General on May 6, 2019.[8] (Am. Compl. at 13-20). Plaintiff alleges that at some unidentified date prior to his transfer to Attica, Defendants threatened that they would have him "packed up and shipped" to a facility far away from his family if he did not withdraw his grievances and lawsuits. (*Id*. at 6). On or about May 19, 2019, Plaintiff was transferred to Attica. (*Id*. at 32-33, 48). Accordingly, there was at most an approximately two-week gap between his first grievance at Sullivan and transfer to Attica; and a five-day gap between his last grievance at Sullivan and transfer to Attica. Given the close temporal proximity between Plaintiff's grievances at Sullivan and his transfer to Attica, the Court finds that Plaintiff has adequately alleged a causal connection with respect to the transfer to Attica. *See Keesh*, 2021 WL 639530, at *9. Although Defendants argue that there could have been many independent reasons why Plaintiff was transferred out of Sullivan to Attica (Defs. Br. at 8), on this motion the Court must accept Plaintiff's allegations as true. Defendants may explore the various "independent" and non-retaliatory reasons for that transfer through discovery in this action.

Defendants argue further that Plaintiff's claim must be dismissed because he fails to allege the personal involvement of any Defendant in the decision to transfer him. Plaintiff alleged a series of grievances filed against Lt. Jordan, which include allegations concerning the disciplinary hearing held on the purportedly false misbehavior report issued by DePaolo and Bonnell, and Lt. Jordan's alleged efforts to erase portions of that hearing tape. (Am. Compl. at 11-15, 27). Although Plaintiff does not identify which of the Defendants threatened him, Plaintiff alleges that Defendants told him they would have him "packed up and shipped" to a facility far away from his family if he did not withdraw his grievances and lawsuits. (*Id*. at 6). For purposes of this motion, the Court is satisfied that Plaintiff sufficiently pleads Defendants Lt. Jordan, DePaolo, and

---

[8] Although Defendants DePaolo and Bonnell are referenced therein (Am. Compl. at 14), the record does not suggest that any of the Defendants were aware of the filing of the Court of Claims complaint.

12

Bonnell's involvement in the decision to have Plaintiff transferred. Whether Defendants Lt. Jordan, DePaolo, and Bonnell requested or ordered Plaintiff's transfer, or had the power to do so, cannot be resolved on the present record at this stage of the proceedings. Accordingly, Defendants' motion to dismiss Plaintiff's retaliation claim asserted against Defendants Lt. Jordan, DePaolo, and Bonnell concerning his transfer from Sullivan to Attica is denied.[9]

With respect to Plaintiff's transfer from Attica to Five Points, however, the attachments to the Amended Complaint reveal that between May 24, 2019 and June 13, 2019, Plaintiff submitted grievances and accommodations requests seeking to be transferred out of Attica. (Am. Compl. at 32-33, 39, 43). Plaintiff's June 13, 2019 "Request for Reasonable Accommodation" seeking a transfer was approved on July 18, 2019 (*id*. at 43 ("Transfer will be submitted, pending classification approval")), and Plaintiff signed a receipt therefor, agreeing with the determination (*id*.). Although the exact date is unclear, by August 22, 2019, Plaintiff was transferred from Attica to Five Points. (*Id*. at 48). The Court does not find plausible Plaintiff's allegations that he was transferred to Five Points in retaliation for his filing of grievances at Attica; rather, Plaintiff's pleading demonstrates that he requested and was granted a transfer of facility. Moreover, Plaintiff has not and cannot plausibly allege that Defendants Lt. Jordan, DePaolo, and Bonnell—employees at Sullivan—were responsible for the alleged retaliatory acts of denying Plaintiff access to the law library and interference with the "Family Reunion Program" while he was housed at other

---

[9] Defendants also argue that they are entitled to qualified immunity because Plaintiff failed to show a violation of a constitutional right. (Defs. Br. at 9; Reply Br. at 5). As discussed herein, "prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights." *Davis*, 160 F.3d at 920. "It has long been established in this circuit that otherwise lawful actions can be unlawful if they are undertaken in retaliation for an inmate's exercise of his rights." *Allah v. Poole*, 506 F. Supp. 2d 174, 189 (W.D.N.Y. 2007). Accordingly, on the facts before it, the Court cannot conclude that Defendants are entitled to qualified immunity. *See, e.g., Hernandez v. Goord*, 312 F. Supp. 2d 537, 548-49 (S.D.N.Y. 2004) (defendants' alleged improperly-motivated prison transfers in retaliation for inmate's exercise of his First Amendment rights violated clearly established law, making qualified immunity unavailable).

correctional facilities. Accordingly, to the extent Plaintiff alleges a First Amendment retaliation claim for his transfer from Attica to Five Points and acts allegedly occurring at Attica and Five Points, the claim is dismissed.

Regarding Defendants Vega and Houck, Plaintiff fails to provide any basis to conclude that they would retaliate on behalf of Lt. Jordan due to Plaintiff's grievances filed against him. Other than alleging that they are DOCCS Movement and Control Analysts who approved Plaintiff's transfers, there is simply no plausible connection pled between Vega and Houck and Plaintiff's grievances against Lt. Jordan. Plaintiff alleges only that he wrote a letter to "Albany Movement and Control" sometime after the alleged retaliatory transfers had occurred (Am. Compl. at 57-58), and posits in his opposition that Defendants Vega and Houck "assist[ed] and aid[ed]" the other Defendants "by honoring their request to have the plaintiff transfer[red] from Sullivan." (Pl. Opp. at 11). These conclusory allegations and speculative arguments provide no basis for the Court to believe that Defendants Vega and Houck retaliated against Plaintiff for grievances they have no apparent connection with. Accordingly, the retaliation claims against Vega and Houck are dismissed. *See Marshall v. Griffin*, No. 18-CV-6673, 2020 WL 1244367, at *7 (S.D.N.Y. Mar. 16, 2020); *see also Ortiz v. Russo*, No. 13-CV-5317, 2015 WL 1427247, at *11 (S.D.N.Y. Mar. 27, 2015) (dismissing retaliation claims where the plaintiff failed to allege "any facts that would support a finding that" certain defendants "were personally motivated" by a "grievance they have no apparent connection with"); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (dismissing retaliation claim where the plaintiff "failed to provide any basis to believe that [the defendant] retaliated for a grievance that she was not personally named in"); *Bryant v. Goord*, No. 99-CV-9442, 2002 WL 553556, at *2 (S.D.N.Y. Apr. 12, 2002) ("The grievances that Plaintiff filed prior to the [transfer] at issue here did not involve any of these Defendants, therefore, there

is no basis to assume that these Defendants [approved the transfers] to retaliate for his filing grievances against other corrections officers.").

      B.   <u>Fourteenth Amendment Due Process Claim</u>

Plaintiff also appears to assert a Fourteenth Amendment due process claim on the grounds that he was transferred to Attica and then to Five Points but had only minor disciplinary violations since 2006 and none lodged against him that would precipitate his transfer. (Am. Compl. at 32, 35, 38, 48, 57; Pl. Opp. at 6, 11). Plaintiff also contends Defendants violated his due process rights by allegedly denying Plaintiff access to the law library and interfering with the "Family Reunion Program." (Am. Compl. 6, 48, 52, 57, 59). To establish a procedural due process claim under section 1983, a plaintiff must show that he (1) possessed an actual property or liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).

Inmates, however, have no right to be housed in a correctional facility of their choosing. "Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than in another does not itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules." *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Davis*, 160 F.3d at 920 (a prisoner has no liberty interest in remaining at a particular correctional facility). Indeed, the Supreme Court has held that an inmate "has no justifiable expectation that he will be incarcerated in any particular prison within a State" and has no constitutional right to be transferred from one facility to another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983). Inmate transfers between prisons "fail[] to involve an interest

independently protected by the Due Process Clause." *Leneau v. Ponte*, No. 16-CV-776, 2018 WL 566456, at *13 (S.D.N.Y. Jan. 25, 2018) (citation omitted). "Nor does removal from a particular prison job assignment implicate a protected liberty interest." *Rodriguez v. City of New York*, No. 14-CV-8647, 2016 WL 11483837, at *6 (S.D.N.Y. Aug. 2, 2016), *adopted by* 2016 WL 5476003 (S.D.N.Y. Sept. 29, 2016). Accordingly, Plaintiff cannot plausibly plead that he possessed, but was denied, a cognizable liberty interest in being transferred back to Sullivan.

Because Plaintiff does not have a liberty interest in his transfers, and no liberty interest in his work assignment, his due process claim with respect to his transfers to Attica and Five Points must be dismissed with prejudice. *See Leneau*, 2018 WL 566456, at *14.

III.    <u>Reconsideration</u>

The Court next addresses Plaintiff's motion pursuant to Federal Rule of Civil Procedure 60(b)(1) to "set[] aside" the Court's February 26, 2021 Order denying without prejudice his January 26, 2021 request for a transfer back to Sing Sing. (Doc. 49). Plaintiff had been transferred from Five Points to Sing Sing in March 2020 (Doc. 8), and then transferred from Sing Sing to Shawangunk in January 2021 (Doc. 38). By letter dated January 26, 2021, and filed on February 17, 2021, Plaintiff requested that the Court transfer him back to Sing Sing upon the grounds that he "had no problem living at Sing Sing" and "there was no reason to have [him] transfer [sic] yet again. . . ." (*Id.*). Construing Plaintiff's letter as a motion for a preliminary injunction, *see In re Best Payphones, Inc.*, 450 F. App'x 8, 15 (2d Cir. 2011), and considering the arguments raised by Plaintiff and Defendants' opposition thereto, the Court determined that Plaintiff failed to establish a likelihood of success on the merits and the existence of irreparable harm. (Doc. 46).

Plaintiff, in his "reply affirmation," requests that the Court alternatively convert his motion under Rule 60(b)(1) to a motion under Rule 59(e) or "rule 3(j) which standards control[] a motion

for reargument." (Doc. 51 at 2). As no judgment has been entered in the case, and the February 26, 2021 Order denying Plaintiff's application for a preliminary injunction is interlocutory and not a final order, the motion cannot be one under Rule 59(e) or 60(b). *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a *judgment* must be filed no later than 28 days after the entry of the judgment." (emphasis added)); Fed. R. Civ. P. 60(b) ("On motion and just terms, the court may relieve a party or its legal representative from a *final* judgment, order, or proceeding. . . ." (emphasis added)); *see also Micolo v. Fuller*, No. 15-CV-06374, 2017 WL 2297026, at *1 (W.D.N.Y. May 25, 2017) (collecting cases).[10]

Effective April 15, 1997, former Local Civil Rule 3(j) became Local Civil Rule 6.3. *See* U.S. Dist. Ct. Rules S. & E.D.N.Y., Local Civil Rules (Apr. 15, 1997) at a-4, Conversion Table. Thus, giving every benefit to Plaintiff, the Court will construe Plaintiff's motion as one for reconsideration.

"Reconsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *RST (2005) Inc. v. Research in Motion Ltd.*, 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) (quoting *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (noting that the "[t]he standard for granting [a reconsideration] motion is strict"). "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a

---

[10] Were the Court to consider Plaintiff's motion as one properly made under Rule 60(b)(1), it would be denied. Plaintiff's submissions do not show that the failure to raise the matters he raises in this motion when he filed his original request for a transfer to Sing Sing was due to "mistake, inadvertence, surprise or excusable neglect," as would be required to warrant relief under Rule 60(b)(1). Though the Court will not construe Plaintiff's motion as one made under Rule 60(b)(1) for the reasons explained, Plaintiff in any event "failed to make a highly convincing showing of exceptional circumstances demonstrating [his] entitlement to the extraordinary judicial relief available under" Rule 60(b)(1). *Lawtone-Bowles v. U.S. Bank Nat'l Ass'n*, No. 19-CV-05786, 2021 WL 1518329, at *5 (S.D.N.Y. Apr. 16, 2021).

vehicle for relitigating issues already decided by the Court." *RST*, 597 F. Supp. 2d at 365 (quoting *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001)). "It is settled law in this District that a motion for reconsideration is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005); *see also Murray v. Dutcavich*, No. 17-CV-9121, 2020 WL 3318212, at *1 (S.D.N.Y. June 18, 2020) ("Reconsideration is not a procedural mechanism used to re-examine a court's decision. Nor should a reconsideration motion be used to refresh failed arguments, advance new arguments to supplant failed arguments, or relitigate issues already decided.").

"Reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Murray*, 2020 WL 3318212, at *1 (quoting *RST*, 597 F. Supp. 2d at 365). Motions for reconsideration "must be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." *Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 391-92 (S.D.N.Y. 2000). Limitations on motions for reconsideration "ensure the finality of decisions and . . . prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters." *Carolco Pictures, Inc. v. Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988) (quoting *Lewis v. New York Tel.*, No. 83-CV-7129, 1986 WL 1441, at *1 (S.D.N.Y. Jan. 29, 1986)).

Plaintiff, in his motion for reconsideration, fails to cite controlling decisions or data that the Court overlooked in issuing the February 26, 2021 Order. Further, Plaintiff rehashes arguments, reiterating that he told "Captain Barnes" that he "had no problem living at Sing Sing" (Doc. 38) in

his motion for reconsideration (Doc. 49-1 at 3). In doing so, Plaintiff merely seeks to relitigate the issues which were thoroughly considered by the Court in rendering its decision, hoping for a different result. (*Compare* Doc. 46 at 2, *with* Doc. 49-1 at 2-5). Therefore, Plaintiff fails to meet the strict burden required on a motion for reconsideration.

Plaintiff argues that because he was not given an opportunity to file a reply, the Court should grant reconsideration of its earlier ruling. Plaintiff, however, did not file a motion; he simply filed a letter requesting that the Court transfer him to Sing Sing (Doc. 38), and the Court construed Plaintiff's letter as a letter-motion. The Court's Individual Practices do not contemplate or permit the filing of replies in letter-motion practice.

In any event, even if the Court were to grant reconsideration of its Order, it would adhere to its earlier ruling. Plaintiff contends that "Shawangunk . . . is the facility where the plaintiff had suffered the severe injury to his leg" and "without injunctive relief, there is a possibility that the plaintiff could suffer another injury to his leg." (Doc. 49 at 2). Plaintiff seeks to dispute DOCCS' position that Sing Sing in fact could not accommodate Plaintiff's disability and thus he will suffer irreparable harm if not transferred back to Sing Sing. However, the fact that Plaintiff believes he could suffer an injury at Shawangunk, just because it happened once before in 2006 (Doc. 49 at 2) is speculative and insufficient to establish the irreparable harm requirement of a preliminary injunction. *Int'l Bus. Machines Corp. v. De Freitas Lima*, No. 20-CV-04573, 2020 WL 5261336, at *14 (S.D.N.Y. Sept. 3, 2020) ("To satisfy the irreparable harm requirement, a plaintiff must demonstrate that absent a preliminary injunction it will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm."), *aff'd sub nom.* 833 F. App'x 911 (2d Cir. 2021). This "new

data" cannot reasonably be expected to alter the conclusion earlier reached. *Murray*, 2020 WL 3318212, at *1.

As the Court discussed in its February 26, 2021 Order, a prisoner has no liberty interest in remaining at a particular correctional facility, and administrative decisions concerning prison transfers are generally within the discretion of DOCCS. *See Davis*, 160 F.3d at 920; *Bonie v. Annucci*, No. 20-CV-640, 2020 WL 2489063, at *3 (S.D.N.Y. May 14, 2020). Accordingly, as the Court found in its February 26, 2021 Order, Plaintiff has shown no likelihood of success on the merits to warrant the injunctive relief sought.

Accordingly, Plaintiff's motion for reconsideration is DENIED.

## **CONCLUSION**

Based upon the foregoing, Defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) is GRANTED IN PART as outlined below.

The Court grants the motion to dismiss Plaintiff's First Amendment retaliation claim against Defendants Vega and Houck <u>without</u> prejudice. *See Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit *pro se* litigants to amend their pleadings" unless "amendment would be futile"). The Court will permit Plaintiff to file a second amended complaint, provided that it is filed within thirty days of the date of this Memorandum Opinion and Order. Plaintiff should include within that second amended complaint all changes to correct the deficiencies identified herein that Plaintiff wishes the Court to consider with respect to the First Amendment retaliation claim against Vega and Houck; and no other amendments. Plaintiff is advised that the second amended complaint will replace, not supplement, the Amended Complaint. Thus, the second amended complaint must contain all of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the thirty-day deadline, or amends the pleading in a manner

not permitted by this Memorandum Opinion and Order, his claims dismissed without prejudice will be dismissed with prejudice.

The Court denies the motion to dismiss Plaintiff's First Amendment retaliation claim against Defendants Lt. Jordan, DePaolo, and Bonnell concerning the transfer to Attica. That claim for relief survives to the extent Plaintiff seeks money damages but not injunctive or declaratory relief. The injunctive and declaratory relief portion of that claim is dismissed <u>with</u> prejudice.

Plaintiff's Fourteenth Amendment due process claims are dismissed <u>with</u> prejudice. While "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). For all the reasons described herein, Plaintiff's Fourteenth Amendment claims are dismissed with prejudice as any amendment would be futile.

Plaintiff's motion for reconsideration is DENIED.

The Clerk of the Court is respectfully directed to terminate the motions (Doc. 35, Doc. 49); to close this case; and to mail a copy of this Memorandum Opinion and Order to Plaintiff.


                                            **SO ORDERED:**


Dated:  White Plains, New York
        July 1, 2021

                                            _____
                                            Philip M. Halpern
                                            United States District Judge