UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ERIC TOLLIVER,

                                        Plaintiff,

                    -against-

LIEUTENANT JORDAN, C.O., et al.

                                        Defendants.

**OPINION AND ORDER**

19-CV-11823 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Eric Tolliver ("Plaintiff") initiated this action, *pro se*, on December 20, 2019. (Doc. 2). Plaintiff initially asserted claims under 42 U.S.C. § 1983 against Defendants Lieutenant Jordan ("Lt. Jordan"), C.O. DePaolo s/h/a C.O. DePalo ("DePaolo"), C.O. E. Bonnell ("Bonnell"), Gabriela Vega ("Vega"), and Richard Houck ("Houck," and collectively, "Defendants") for violations of his First and Fourteenth Amendment rights in connection with transfers between facilities which he alleged were done in retaliation for his having filed grievances and civil actions against correction officers. (Doc. 17, "Am. Compl.").[1]

The Court, in a July 1, 2021 Memorandum Opinion & Order (the "Prior Order"), granted in part Defendants' motion to dismiss.[2] (Doc. 53). Specifically, Plaintiff's First Amendment retaliation claim alleged against Lt. Jordan, DePaolo, and Bonnell concerning the transfer to Attica Correctional Facility ("Attica") survived to the extent Plaintiff seeks money damages but not injunctive or declaratory relief. (*See id.*). The Court dismissed Plaintiff's Fourteenth Amendment claims with prejudice (*id.* at 21); and dismissed Plaintiff's First Amendment retaliation claim against Vega and Houck without prejudice and with leave to replead, provided Plaintiff filed a

---

[1] Citations to the documents referenced herein correspond to the pagination generated by ECF.

[2] This decision is available on commercial databases. *See Tolliver v. Jordan*, No. 19-CV-11823, 2021 WL 2741728 (S.D.N.Y. July 1, 2021).

second amended complaint within thirty days of the date of the Court's decision (*id*. at 20-21). On August 19, 2021, in light of Plaintiff's failure to file a second amended complaint, the Court dismissed with prejudice Plaintiff's First Amendment retaliation claim against Vega and Houck. (Doc. 57).[3] As a result, the sole claim remaining in this action is a First Amendment retaliation alleged against Lt. Jordan, DePaolo, and Bonnell concerning the transfer to Attica. Defendants filed an Answer to the Amended Complaint on August 31, 2021 (Doc. 59), and the parties thereafter engaged in discovery on Plaintiff's remaining claim pursuant to a Civil Case Discovery Plan and Scheduling Order. (Doc. 70).

Plaintiff, on August 1, 2022, sought leave to move for summary judgment. (Docs. 82-83). On August 24, 2022, Defendants filed a letter in opposition to Plaintiff's request and in support of their anticipated summary judgment motion, together with a Rule 56.1 Statement and a response to what they believed to be Plaintiff's Rule 56.1 Statement. (Doc. 88). Plaintiff, on September 13, 2022, filed opposition to Defendant's letter. (Doc. 89). The Court held a conference on September 15, 2022, at which time the parties were heard on their anticipated motions. (Doc. 90). The Court granted the parties' requests to each file motions for summary judgment and set a briefing schedule for the motions. (*Id*.).

Plaintiff filed his motion for summary judgment on October 11, 2022. (Doc. 93; Doc. 94 at 1-11, "Pl. Aff."). Defendants filed their motion for summary judgment on October 20, 2022. (Doc. 95; Doc. 96, "Def. 56.1 Stmt."; Doc. 97; Doc. 98, "Dedushi Decl."; Doc. 99, "Jordan Decl."; Doc. 100, "DePaolo Decl."; Doc. 101, "Bonnell Decl."; Doc. 102, "Dewitt Decl."; Doc. 103, "Escobar Decl."; Doc. 104, "Justiniano Decl."; Doc. 105, "Def. Br."). Plaintiff opposed Defendants' motion (Doc. 106, "Pl. Opp."), Defendants opposed Plaintiff's motion (Doc. 107,

---

[3] This decision is available on commercial databases. *See Tolliver v. Jordan*, No. 19-CV-11823 (PMH), 2021 WL 4263168 (S.D.N.Y. Aug. 19, 2021).

"Def. Opp."), and on November 22, 2022, Defendants filed a reply memorandum of law in further support of their motion (Doc. 108, "Reply").[4]

For the reasons set forth below, Defendants' motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motions for summary judgment and draws them from the Amended Complaint, Defendants' Rule 56.1 Statement, Plaintiff's Rule 56.1 Statement and Defendants' responses thereto (Doc. 88-2; Doc. 107-1), and the accompanying affidavits and declarations, together with exhibits. Unless otherwise indicated, the facts cited herein are undisputed.

Plaintiff was housed at Sullivan Correctional Facility ("Sullivan") in April 2019. (Am. Compl. at 6, 32; Dedushi Decl., Ex. A; *id*., Ex B at 14). On or about April 19, 2019, Plaintiff was involved in an altercation with another incarcerated individual at Sullivan. (Dedushi Decl., Ex. A; Doc. 107-1 ¶ 1). As a result of that incident, on or about April 19, 2019, Plaintiff was issued a misbehavior report. (Pl. Aff. ¶ 2; Doc. 88-2 ¶ 1; Doc. 107-1 ¶ 2). Bonnell and DePaolo witnessed the April 19, 2019 altercation. (Pl. Aff. ¶ 3; Bonnell Decl., ¶ 5; DePaolo Decl., ¶ 5; Dedushi Decl., Ex. C). A disciplinary hearing on the Misbehavior Report for the underlying April 19, 2019 incident was held on April 30, 2019 and May 2, 2019. (Pl. Aff. ¶ 5; Dedushi Decl. Ex. C). Lt. Jordan presided over Plaintiff's disciplinary hearing as the hearing officer. (Pl. Aff. ¶ 5, Ex. A;

---

[4] Plaintiff had requested, on September 19, 2022, that the Court seek *pro bono* counsel to represent him in connection with the forthcoming summary judgment motion practice. (Doc. 91). The Court granted Plaintiff's request on September 24, 2022. (Doc. 92). On January 1, 2023, after the motions for summary judgment were fully submitted and *sub judice*, *pro bono* counsel appeared on Plaintiff's behalf. No further filings were made or requested.

Dedushi Decl. Ex. C). On May 2, 2019, Lt. Jordan dismissed the charges in Plaintiff's Misbehavior Report. (Dedushi Decl., Ex. C at 77-78; Jordan Decl. ¶ 5).

Defendants submitted evidence demonstrating that on or about May 6, 2019, an Unscheduled Transfer Review Request for Plaintiff was prepared by Offender Rehabilitation Coordinator Jimi Dewitt at Sullivan. (Dewitt Decl. ¶¶ 10-13, Ex. A). Dewitt prepared the Unscheduled Transfer Review Request because Plaintiff's Misbehavior Report regarding the April 19, 2019 altercation indicated that the fighting individuals needed to be separated. (*Id.*). Dewitt explained that the request to separate Plaintiff and the other incarcerated individual was made to ensure the safety and security of both individuals involved in the altercation. (*Id.* ¶ 10). The record evidence further demonstrates that the Unscheduled Transfer Review was reviewed and approved on May 6, 2019 by Supervising Offender Rehabilitation Coordinator Ariel Escobar and Deputy Superintendent for Programs Angel Justiniano at Sullivan. (Dewitt Decl. ¶¶ 11-13, Exhibit A; Escobar Decl. ¶¶ 9-10; Justiniano Decl. ¶¶ 10-11).

Plaintiff, on May 6, 2019, filed a lawsuit in the Court of Claims against the State of New York. (Am. Compl. at 13-20; Doc. 107-1 ¶ 8). On or about May 8, 2019, Sullivan sent the Unscheduled Transfer Review for Plaintiff to DOCCS's Classifications and Movement. (Dedushi Decl., Ex. B at 16). On or about May 9, 2019, Plaintiff submitted a grievance, which was filed under grievance number SUL- 25018-19, titled "FOIL Denial," in which he alleged that he was being denied access to his disciplinary hearing tapes. (Am. Compl. at 27; Dedushi Decl., Ex. D at 2-6, 7-8). Plaintiff's grievance sought the production of the disciplinary hearing tapes, and alleged that prior to the conclusion of the hearing, he notified Lt. Jordan that he intended to file a civil suit concerning DePaolo and Bonnell's alleged negligence and had asked for the hearing tapes to be preserved. (Am. Compl. at 27; Dedushi Decl., Ex. D at 7-8). On May 16, 2019, Plaintiff filed a

grievance that alleged that Lt. Jordan tampered with the hearing tapes. (Am. Compl. at 11-12; Dedushi Decl., Ex. D at 2-6, 9-10).

On May 15, 2019, Classification and Movement approved the Unscheduled Transfer Review recommendation sent from Sullivan requesting that Plaintiff be separated from the other incarcerated individual. (Dedushi Decl., Ex. B at 16). On May 24, 2019, Plaintiff was transferred from Sullivan to Attica. (*Id*. at 18).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id*. (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). The Court's function at this juncture is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

Claims cannot proceed past a motion for summary judgment in the absence of sufficient proof as to each essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . . ." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is

appropriate when "the law so favors the moving party that entry of judgment in favor of the movant . . . is proper").

The Court is, of course, mindful that "[*p*]*ro se* litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018) (internal quotation marks omitted).[5] "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-02630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020). This status does not, however, excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment" (internal quotation marks omitted)); *Ross v. Koenigsmann*, No. 14-CV-01321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017), *adopted sub nom. Ross v. Mannava*, 2017 WL 4338883 (N.D.N.Y. Sept. 29, 2017).

---

[5] The special solicitude due a *pro se* litigant depends upon that particular party's litigation experience, as "the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010); *see also Shomo v. New York Dep't of Corr. Servs.*, No. 04-CV-00910, 2007 WL 2580509, at *3 (N.D.N.Y. Sept. 4, 2007) (observing that granting "experienced *pro se* litigants" the same solicitude due an inexperienced one "would tilt the scales of justice unfairly in favor of the *pro se* litigant and against his opponents"). As the Court noted in the Prior Order, Plaintiff is, by his own admissions, an experienced litigant. (Doc. 53 at 7). Nonetheless, for purposes of this decision, the Court sets aside the fact that Plaintiff's solicitude should be somewhat diminished due to his considerable litigation experience and affords Plaintiff the full weight of special solicitude due *pro se* litigants.

## ANALYSIS

Plaintiff and Defendants each maintain that they are entitled to summary judgment on Plaintiff's sole remaining First Amendment retaliation claim concerning his transfer to Attica. "[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action." *Randle v. Alexander*, No. 10-CV-09235, 2011 WL 1226228, at *2 (S.D.N.Y. Mar. 22, 2011) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).

Defendants, for purposes of their motion, do not contest the first two elements—that Plaintiff's grievances and Court of Claims lawsuit constitute protected speech or conduct and that adverse action was taken against Plaintiff. Defendants, rather, argue that the claim fails as a matter of fact and law because the record does not support a finding in Plaintiff's favor on the third element—a causal connection between the protected speech and the alleged adverse action.

Plaintiff, to establish his entitlement to summary judgment and overcome Defendants' motion, must demonstrate a causal link between his protected activity—the grievances and Court of Claims lawsuit—and his transfer to Attica in order to satisfy his burden on the third element of the retaliation claim. The "allegations must support an inference that the protected conduct was 'a substantial or motivating factor for the adverse actions taken by prison officials.'" *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)).

"At the most basic level, defendants' allegedly retaliatory actions must occur later in time than plaintiffs' protected speech." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *7 (S.D.N.Y. Jan. 8, 2021) (quotation marks omitted), *aff'd*, 2022 WL 121281 (2d Cir. Jan. 13, 2022).

The record evidence shows that Plaintiff's grievances were not filed until after the transfer process was already underway. Plaintiff's grievances were filed on or about May 9, 2019 and May 16, 2019 (Am. Compl. at 11-12, 27; Dedushi Decl., Ex. D at 2-6, 7-10), while the Unscheduled Transfer Review was prepared, reviewed, and approved on May 6, 2019 (Dewitt Decl. ¶¶ 10-13, Ex. A; Escobar Decl. ¶¶ 9-10, Ex. A; Justiniano Decl. ¶¶ 10-11, Ex. A) and submitted to DOCCS's Classifications and Movement on May 8, 2019 (Dedushi Decl., Ex. B at 16).

With respect to the Court of Claims lawsuit, Plaintiff signed and mailed the documents on May 6, 2019, but they were not received by the Attorney General's Office until May 8, 2019. (Dedushi Decl., Ex. F). Plaintiff suggests that the Court should draw the inference that Defendants were aware of the Court of Claims lawsuit on May 6, 2019 when he placed his papers "in the hands of a DOCCS official for it to be notarized"—although he does not identify that "DOCCS official" or provide anything more than sheer speculation for the conclusion that Defendants therefore had to have known of the commencement (or content) of the lawsuit. (Pl. Opp. at 1-3). The inference Plaintiff urges cannot be drawn on a motion for summary judgment, where it is unsupported by a shred of evidence, and refuted by documentary evidence submitted by Defendants. The record demonstrates that the Unscheduled Transfer Review process began on the same date that Plaintiff signed and mailed the Court of Claims lawsuit for filing, and prior to Plaintiff's filing of the May 9, 2019 and May 16, 2019 grievances.

Plaintiff also argues that he put Lt. Jordan on notice of the imminent commencement of the Court of Claims lawsuit when, at some point during the disciplinary hearing, he asked for the hearing tapes to be preserved for such purpose. (Am. Compl. at 27; Pl. Opp. At 3). Plaintiff does not cite to any evidence to support this statement.

Moreover, and separately, the record evidence conclusively demonstrates that Defendants were not personally involved in Plaintiff's transfer to Attica. Unscheduled Transfer Reviews are generally prepared by an Offender Rehabilitation Coordinator and are then forwarded to a Supervising Offender Rehabilitation Coordinator for review. (Dewitt Decl. ¶ 6; Escobar Decl. ¶ 5; Justiniano Decl. ¶ 6). After approval by the Supervising Offender Rehabilitation Coordinator, Unscheduled Transfer Reviews are forwarded to the Deputy Superintendent for Programs for approval. (Dewitt Decl. ¶¶ 6-7; Escobar Decl. ¶ 6; Justiniano Decl. ¶ 7). If approved by both the Supervising Offender Rehabilitation Coordinator and the Deputy Superintendent for Programs, the transfer request is sent back to the Offender Rehabilitation Coordinator for processing directly to DOCCS Classification and Movement for a review of the recommendation and a decision. (Dewitt Decl. ¶ 8; Escobar Decl. ¶ 7; Justiniano Decl. ¶ 8). Classification and Movement reviews the facility's transfer request and determines whether approval of the recommendation is appropriate and the facility to which the incarcerated individual will be transferred. (Dewitt Decl. ¶ 9; Escobar Decl. ¶ 8; Justiniano Decl. ¶ 9).

The evidence shows that an Unscheduled Transfer Review for Plaintiff was made by non-party Dewitt, the Offender Rehabilitation Coordinator, because of the altercation between Plaintiff and the other incarcerated individual; the transfer request was then signed by non-parties Escobar, the Supervising Offender Rehabilitation Coordinator, and Justiniano, the Deputy Superintendent for Programs; and, after approval, it was sent to DOCCS Classification and Movement unit in DOCCS's Central Office. (Dewitt Decl. ¶¶ 10-13, Ex. A; Escobar Decl. ¶¶ 9-10, Ex. A; Justiniano Decl. ¶¶ 10-11, Ex. A; Dedushi Decl., Ex. B at 16). Classification and Movement made the ultimate decision on whether Plaintiff's transfer was appropriate and determined the facility to which Plaintiff would be sent. (Dedushi Decl., Ex. B at 16). Defendants were not involved in the transfer

and did not have the authority to decide such transfers. (Jordan Decl. ¶ 4; DePaolo Decl. ¶ 4; Bonnell Decl. ¶ 4). The Court rejects Plaintiff's invitation to draw the inference that Defendants are responsible for making the initial request to transfer in light of this documentary evidence demonstrating that the request was made by non-party Dewitt and processed through the ordinary chain of command, with no involvement from Defendants.

In sum, the record is devoid of evidence that Defendants were aware of Plaintiff's Court of Claims lawsuit prior to the transfer—or that they even had any authority for his transfer—and there is substantial evidence in the record that the transfer process was underway prior to Plaintiff's grievances at Sullivan. Thus, the record "does not support a reasonable finding that the decision to [transfer Plaintiff] was borne of animus against his protected activity." *Sheika v. Levesque*, No. 06-CV-01876, 2011 WL 3930272, at *4 (D. Conn. Apr. 21, 2011).

Finally, and even assuming the evidence permits a reasonable inference that Plaintiff's protected activity was a motivating factor in the challenged decision, the record demonstrates that the same decision would have been made on a valid basis alone. *Salahuddin v. Perez*, 216 F. App'x 69, 71 (2d Cir. 2007) ("With respect to his First Amendment retaliation claim, he has not demonstrated the existence of a genuine issue of material fact as to whether the correctional officers' decision would have been made regardless of the conduct [plaintiff] claims was protected, as it is undisputed that he made unauthorized phone calls in violation of prison rules."); *Sher v. Coughlin*, 739 F.2d 77, 82 (2d Cir. 1984) ("[S]tate action taken on the basis of both valid and invalid motivations is not constitutionally tainted by the invalid motive if the action would in any event have been taken on the constitutionally valid basis.").

Defendants have proffered evidence demonstrating that the requested transfer concerned the need to separate Plaintiff from another incarcerated individual with whom Plaintiff was

involved in an altercation. (Dewitt Decl. ¶¶ 10-13, Exhibit A). It is undisputed that Plaintiff was involved in an altercation (Dedushi Decl., Ex. A; Doc. 107-1 ¶ 1), and Defendants have established that DOCCS staff routinely prepare Unscheduled Transfer Reviews to recommend the transfer of an incarcerated individual out of their current facility for many safety, security or administrative reasons. (Dewitt Decl. ¶ 5; Justiniano Decl. ¶ 5).

Plaintiff's conclusory conjecture that the sole motivation for the transfer was retaliatory does not create a genuine dispute of fact, nor does it warrant judgment in his favor. (*See* Pl. Opp. at 4-5 (suggesting that the other incarcerated individual involved in the altercation should have been the one transferred if the real reason was to separate the two, because that individual pled guilty to assaulting Plaintiff and was disciplined therefor, while Plaintiff was the one who was seriously injured and whose disciplinary charges were dismissed)). Plaintiff's speculation and self-serving testimony is insufficient to defeat summary judgment in the face of documentary evidence cited by Defendants. *See, e.g., Brown v. Phipps*, No. 19-CV-04356, 2021 WL 3604664, at *5 (S.D.N.Y. Aug. 12, 2021); *Khudan v. Lee*, No. 12-CV-08147, 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016) (Sullivan, J.); *see also Deebs v. Alstom Transp., Inc.*, 346 Fed. App'x 654, 656-57 (2d Cir. 2009) (plaintiffs' "own self-serving testimony" insufficient to defeat summary judgment in the face of documentary evidence adduced during discovery cited by defendants). The record amply supports the "valid motivation," that the request to separate the incarcerated individuals, which resulted in the transfer of Plaintiff out of Sullivan, was done to ensure the safety and security of both Plaintiff and the other incarcerated individual, as well as the security of the facility.

In sum, although the allegations in the Amended Complaint, taken as true, may have been enough to "give plausible support to a minimal inference" of retaliation on the prior motion to dismiss, the evidence in the record, even construed in Plaintiff's favor, is not enough for him to

establish a First Amendment retaliation claim, let alone that these Defendants were personally involved in the transfer with which Plaintiff takes issue. *See Dipinto v. Westchester Cnty.*, No. 18-CV-00793, 2023 WL 1438721, at *8 (S.D.N.Y. Feb. 1, 2023). Indeed, in stark contrast to Defendants' record evidence, Plaintiff's proof of "retaliation" consists of no more than rank speculation coupled with self-serving inuendo. This record is barren of proof beyond that to support Plaintiff's claim of entitlement to summary judgment. Accordingly, Defendants' motion for summary judgment dismissing Plaintiff's retaliation claim concerning his transfer from Sullivan to Attica is granted, Plaintiff's motion for summary judgment is denied, and Plaintiff's Amended Complaint is dismissed.[6]

## CONCLUSION

Based upon the foregoing, Defendants' motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED.

The Clerk of the Court is respectfully directed to terminate the motions (Doc. 93, Doc. 95) and to close this case.

**SO ORDERED:**

Dated: White Plains, New York
          March 28, 2023

_____
Philip M. Halpern
United States District Judge

---

[6] The Court, in light of its holdings herein, need not and does not reach Defendants' alternative argument that they are entitled to qualified immunity.

13